**FILED**
**Jul 22, 2026**
**08:13 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | |
|---|---|
| Michael Brendan Hodge | Docket Nos. 2025-30-5257 |
| | 2025-30-5259 |
| v. | |
| | State File Nos. 4812-2024 |
| Alcoa, Inc., and Arconic Corp., et al. | 68507-2024 |

Appeal from the Court of Workers'
Compensation Claims
Pamela B. Johnson, Judge

---

**Affirmed and Remanded**

---

In this interlocutory appeal, the employer alleges that the trial court erred in its analysis of the employee's notice and filing requirements. The employee, who worked as a brick mason at an aluminum processing plant, provided notice of his alleged occupational disease claim and filed his petition for benefits approximately eight years after he became disabled from working. Following an expedited hearing, the trial court determined the employee is likely to prevail at trial in establishing the timeliness of both his written notice to the employer and the filing of his petition, and it ordered the employer to provide medical benefits. The employer has appealed. Having carefully reviewed the record, we affirm the trial court's order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

Tiffany S. Hranicky, Knoxville, Tennessee, for the employer-appellants, Alcoa, Inc., and Arconic Corp.[1]

David H. Dunaway, Alcoa, Tennessee, for the employee-appellee, Michael Brendan Hodge

**Factual and Procedural Background**

Michael Brendan Hodge ("Employee") worked as a brick mason at an aluminum processing plant operated by Alcoa, Inc., and Arconic Corp. ("Employer"), between 2002

---

[1] According to information contained in the record, Arconic Corp. took over operations at the plant from and is the successor-in-interest to Alcoa, Inc. Both are named as potentially responsible parties in this litigation.

and 2016.  His job included building and, when necessary, rebuilding baking furnaces used in the smelting process for aluminum production.  In his affidavit filed in support of his claim, Employee testified that he worked in furnace rooms when the furnaces were burning.  He further alleged in various pleadings and other filings that his job duties resulted in exposures to a number of hazardous substances, including aluminum oxide, bauxite, creosote, polycyclic aromatic hydrocarbons, asbestos, carbon monoxide, and other allegedly toxic materials.  Mr. Hodge asserted that he was never warned of any dangers associated with the substances to which he was exposed and was not provided appropriate personal protective equipment.  He further alleged that although Employer informed Employee his exposures would "be monitored," they were not.

In 2016, while working for Employer, Employee sought medical care after experiencing vision disturbances and other symptoms.  He was diagnosed with a meningioma, which was described in the record as a non-malignant brain tumor.  He underwent surgery to have the tumor removed.  Employee testified that at no point during his treatment did a physician discuss with him the possible causes of his meningioma.  Following surgery, Employee believed he would be able to return to work for Employer but was not offered a position.  In 2018, he was approved for Social Security Disability Insurance benefits, but he still believed he would be able to return to work following a period of rehabilitation.

Beginning in 2023, Employee developed additional symptoms, including memory loss, limited attention span, difficulty concentrating, and shortness of breath.  On December 27, 2023, he was evaluated by Dr. C.M. Salekin, a neurologist and occupational medicine physician.  According to Employee, Dr. Salekin was the first physician ever to suggest that his medical conditions and neurological symptoms may be explained by occupational exposures to hazardous substances.  As a result, Employee gave written notice to Employer in early January 2024 that he was asserting a claim for workers' compensation benefits due to occupational exposures to hazardous substances in the course and scope of his employment.

Employee filed a petition for benefit determination ("PBD") on January 4, 2024, and a request for a hearing on May 1, 2024.  He then filed a second PBD on September 17, 2024, requesting treatment from a gastroenterologist in addition to his earlier requests for neuropsychiatric and pulmonary care.  In July 2025, Employee voluntarily dismissed his PBDs and, one month later, Employer filed two PBDs to restart the litigation process on both claims.  Those PBDs were consolidated by the court.  In November 2025, the court set an expedited hearing to occur on April 1, 2026.

Employer did not authorize medical care or provide any panels of physicians in response to Employee's allegations of one or more occupational diseases.  As a result, Employee sought care on his own from Dr. Hina Kouser, an internal medicine specialist, and Dr. Mohammad Hussain, a neurologist.  He was subsequently referred to Dr.

2

Christopher Gallati, a neurosurgeon. In August 2024, Employee was diagnosed with a new or recurrent meningioma. Employee had not, as of the date of the expedited hearing, undergone additional surgery.

In preparation for the expedited hearing, the parties deposed Adrianne Stoltenberg, an industrial hygienist. Ms. Stoltenberg explained that the processing of aluminum can include exposures to aluminum oxide, aluminum dust, and bauxite. According to Ms. Stoltenberg, long-term exposures to such substances can cause pulmonary fibrosis, encephalopathy, and respiratory problems. Employee also presented evidence from Dr. Salekin, who opined that Employee's workplace exposures were more likely than not responsible for his medical conditions and need for treatment, and from Dr. Hussain, who concurred with the opinions expressed by Dr. Salekin. For its part, Employer argued at the expedited hearing that Employee had failed to give proper notice of any alleged occupational disease and failed to file his PBD within the applicable statute of limitations.

Following the hearing, the trial court issued an order in which it determined Employee was likely to prevail at trial in proving he gave proper notice of his alleged occupational diseases and timely filed his PBD based on a tolling of the statute of limitations. The court ordered Employer to provide medical benefits in accordance with Tennessee Code Annotated section 50-6-204 and identified Dr. Hussain and Dr. Kouser as authorized treating physicians. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to credibility determinations made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "when it comes to deposition testimony, an appellate panel is in the same position as the trial court to make credibility determinations." *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025). Thus, when medical proof is presented by deposition, "the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony." *Id.* Moreover, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2025).

**Analysis**

In its notice of appeal, Employer raises three issues, which we have restated as: (1) whether the trial court erred in determining the statute of limitations was tolled until Employee knew or had reason to know of his alleged work-related occupational disease; (2) whether the trial court erred in finding Employee gave proper notice of his claims; and (3) whether the trial court erred in determining Employee came forward with sufficient evidence that his alleged medical conditions arose primarily out of and in the course and scope of his employment.

*Tolling of the Statute of Limitations*

In circumstances where an employee alleges an occupational disease, a PBD must be filed in accordance with the statute of limitations set out in Tennessee Code Annotated section 50-6-306, which states:

> The right to compensation for an occupational disease . . . shall be forever barred, unless a claim is initiated pursuant to [section] 50-6-203; provided, however, that the applicable time limitation period or periods shall commence as of the date of the beginning of the incapacity for work resulting from an occupational disease . . . .

Tenn. Code Ann. § 50-6-306(a) (2025).[2]

The Supreme Court's Special Workers' Compensation Appeals Panel addressed the statute of limitations in the context of occupational disease claims in *Lively ex rel. Lively v. Union Carbide Corp.*, No. E2012-02136-WC-R3-WC, 2013 Tenn. LEXIS 642 (Tenn. Workers' Comp. Panel Aug. 13, 2013). There, the surviving spouse pursued death benefits as a claim separate and apart from her deceased spouse's prior settlement for the same occupational disease. *Id.* at *1-2. In addressing at what point the surviving spouse's claim accrued, the Appeals Panel noted as follows:

> Parenthetically, the parties appear to have operated, at least briefly, under the erroneous assumption that the date of injury in an occupational disease case should be the date that the employee is diagnosed with the disease. As stated, the primary statute governing occupational disease cases provides that the "happening of an injury" occurs either by the partial or total incapacity for work or death; there is no mention of the date of diagnosis as an option for determining the date of injury. *In contrast, the statute of limitations for filing*

---

[2] Tennessee Code Annotated section 50-6-203(b)(1) provides that, in circumstances where an employer has not paid any workers' compensation benefits, "the right to compensation under this chapter shall be forever barred, unless the notice required by [section] 50-6-201 is given to the employer and a [PBD] is filed . . . within one (1) year after the accident resulting in injury."

4

*a claim based on an occupational disease is not triggered without, first, an incapacity for work; and second, either actual or constructive knowledge an occupational disease is the cause of the incapacity for work.* In consequence, while the date of diagnosis in an occupational disease is relevant insofar as the statute of limitations is concerned, it has no effect on the date of injury, which is determined by either incapacity for work or the event of death.

*Id.* at \*26-28 (emphasis added) (internal citations and some quotation marks omitted). We analyzed this issue in *Nickerson v. Knox Cnty.*, No. 2019-03-0559, 2020 TN Wrk. Comp. App. Bd. LEXIS 52 (Tenn. Workers' Comp. App. Bd. Sep. 2, 2020). After reviewing *Lively*, we concluded, "Thus, in the context of occupational disease cases, the Appeals Panel has made clear that the analysis for determining the date a statute of limitations is triggered is not the same as the analysis for determining the date of injury. We find no reason to depart from this rationale." *Id.* at \*18.[3]

Finally, in an analogous situation, Tennessee Courts have addressed application of the common law "discovery rule" in the context of gradual injury claims. For example, in *Taylor v. G.UB.MK Constructors*, No. E2019-00461-SC-R3-WC, 2020 Tenn. LEXIS 160 (Tenn. Workers' Comp. Panel June 2, 2020), the Appeals Panel analyzed the discovery rule in the context of a hearing loss case. In considering the employer's argument that the claim was not timely filed, the Panel explained:

Taking the discovery rule and last-day-worked rule together, an employee's claim filed more than one year after his last day of work would not be barred by the last-day-worked rule if the employee, by the exercise of diligence and care, did not discover that he had sustained a compensable injury until sometime later.

*Id.* at \*18. Here, the parties agree Employee first became incapacitated from work in 2016 after surgery. However, to date, there is no evidence in the record that Employee knew "or in the exercise of reasonable caution" should have known that the condition necessitating surgery could be work-related. *See Jones v. Lenoir City Car Works*, 392 S.W.2d 671, 676 (Tenn. 1965). Employee testified that no physician advised him of the potential causes of the meningioma until December 2023, and that testimony was unrefuted. Employee filed his PBD in January 2024. Under these circumstances, we cannot conclude the trial court erred in determining Employee is likely to prevail at trial in proving that he filed his PBD within one year of the date he knew or reasonably should have known he suffered from a work-related occupational disease.

---

[3] Our opinion in *Nickerson* was affirmed and adopted by the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel in *Nickerson v. Knox Cnty.*, No. E2020-01286-SC-R3-WC, 2021 Tenn. LEXIS 124 (Tenn. Workers' Comp. Panel June 8, 2021).

Next, Employer argues the trial court erred in is analysis of the notice issue. In the context of an occupational disease claim, Tennessee Code Annotated section 50-6-305 requires the injured worker to give written notice to his or her employer "[w]ithin thirty (30) days after the first distinct manifestation of an occupational disease." Tenn. Code Ann. § 50-6-305(a) (2025). Again, however, we must consider the applicability of Tennessee's discovery rule.

We previously addressed this issue in *Wilson v. O.G. Kelley and Co.*, No. 2018-02-0115, 2019 TN Wrk. Comp. App. Bd. LEXIS 13 (Tenn. Workers' Comp. App. Bd. Mar. 15, 2019). In that case, the employee had worked for over twenty years as a machinist at a company that manufactured radiation shielding. *Id.* at *2. He was evaluated by physicians in 2005 and 2006 for possible lead poisoning. *Id.* At that time, he was prescribed a treatment called chelation therapy in an effort to reduce the amount of lead in his blood. *Id.* at *3. About ten years later, the employee was evaluated by a cardiologist and a hematologist for a variety of increasing symptoms and was diagnosed with elevated lead levels. *Id.* at *4-5. Following an expedited hearing, the trial court ordered the employer to provide a panel of hematologists for authorized treatment, and the employer appealed. *Id.* at *6.

In analyzing the employee's notice requirement, we explained as follows:

When an employee seeks workers' compensation benefits for an occupational disease, the employee must establish that he or she gave legally sufficient notice to the employer "[w]ithin thirty (30) days after the first distinct manifestation of an occupational disease." Tenn. Code Ann. § 50-6-305(a) (2018). In interpreting this provision, which was not impacted by the 2013 reforms or subsequent amendments, the Appeals Panel has explained that "notice of an injury is tolled if an employee is reasonably unaware that the condition is work-related." *Clifton v. Nissan N. Am.*, No. M2008-01640-WC-R3-WC, 2009 Tenn. LEXIS 507, at *13-14 (Tenn. Workers' Comp. Panel Aug. 18, 2009). According to the Tennessee Supreme Court, "[i]t is enough that the employee notifies the employer of the facts concerning his injury of which he is aware or reasonably should be aware." *Pentecost v. Anchor Wire Corp.*, 695 S.W.2d 183, 185 (Tenn. 1985).

In *Mahle, Inc. v. Rouse*, No. E2005-02432-WC-R3-CV, 2006 Tenn. LEXIS 939 (Tenn. Workers' Comp. Panel Oct. 12, 2006), the employee alleged his long-term exposure to workplace chemicals caused various medical conditions that manifested in November 1998. His attorney gave notice to the employer of his workers' compensation claim in April 2001, and the employer alleged the notice was legally insufficient. *Id.* at *3. In

6

addressing the notice issue, the Appeals Panel explained that "notice can be excused or delayed if a reasonable excuse exists for not complying with the rule." *Id.* at *9. The Panel then noted that "[u]sually, the first manifestation is considered to occur when there is a diagnosis from a physician *and the employee knows or should know that his problems are work-related*." *Id.*

*Wilson*, 2019 TN Wrk. Comp. App. Bd. LEXIS 13, at *9-10 (emphasis added); *see also Ernstes v. Printpack, Inc.*, No. W2023-00863-SC-R3-WC, 2024 Tenn. LEXIS 1, at *15 (Tenn. Workers' Comp. Panel Jan. 2, 2024) ("Under the discovery rule, [the e]mployee was required to give notice of her gradually occurring injury within fifteen days of when she knew or reasonably should have known that she suffered a work-related injury that resulted in permanent physical impairment.").[4]

Here, evidence in the record supports a finding that Employee first became aware the meningioma could be work-related on December 27, 2023, and his attorney gave written notice to Employer on January 4, 2024. For the same reasons noted above, we conclude the trial court did not err in determining Employee is likely to prove at trial he gave legally sufficient notice of his occupational disease claim.[5]

*Evidence of Medical Causation*

Finally, we note that although Employer alleged in its notice of appeal that the trial court erred "in determining Employee's symptoms were primarily work-related," that issue was not addressed in Employer's brief on appeal. When an appellant fails to offer substantive arguments on appeal, an appellate court's ability to conduct meaningful appellate review is significantly hampered. *Holmes v. Ellis Watkins d/b/a Watkins Lawn Care*, No. 2017-08-0504, 2018 TN Wrk. Comp. App. Bd. LEXIS 7, at *3-4 (Tenn. Workers' Comp. App. Bd. Feb. 13, 2018). Further, "where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the

---

[4] Gradual injuries are subject to the fifteen-day notice rule in Tennessee Code Annotated section 50-6-201(b), whereas occupational disease claims are subject to the thirty-day notice rule set out in subsection 50-6-305(a).

[5] In its pre-hearing brief, Employer claimed it has "had difficulty tracking what 'injury' Employee is claiming." It then asserted that "the 2016 brain tumor is the only thing that could qualify as an 'injury' that Employer is aware of." It is well-settled in Tennessee that an employee is required to provide notice when the employee "knows or reasonably should know" of the occurrence of an injury or occupational disease, but the employee need not understand the nature or extent of the alleged injury for that notice to be legally sufficient. *See, e.g.*, *Dyer v. PetSmart, Inc.*, No. 2023-05-0917, 2024 TN Wrk. Comp. App. Bd. LEXIS 5, at *21 (Tenn. Workers' Comp. App. Bd. Mar. 1, 2024) ("Tennessee courts have consistently held that an employee is required to give timely notice of the accident but need not understand or appreciate the nature or extent of the injuries arising from the accident at the time notice is given."). Indeed, it is through authorized medical care provided pursuant to the Workers' Compensation Law that both the injured worker and the employer can learn the nature and extent of the alleged injury or condition.

issue is waived." *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010). Thus, we consider the issue to have been waived in the context of this appeal.

## Conclusion

For the foregoing reasons, we affirm the trial court's order in all respects and remand the case. Costs on appeal are taxed to Employer.